UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov



FILED
JUN -7 2018
CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re:

Chapter 13

AL-KARIM JIVRAJ

CASE NO.: **6:16-bk-06662-KSJ**

Debtor.
_____/

**MOTION TO APPROVE LOAN MODIFICATION AGREEMENT: <u>CALIBER HOME LOANS AND THE PROPERTY LOCATED AT</u>**
**17700 Deer Isle Circle Winter Garden, FL 34787**

---

**NOTICE OF OPPORTUNITY TO**
**<u>OBJECT AND REQUEST FOR HEARING</u>**

Pursuant to Local Rule 2002-4, the Court will consider this motion, objection or other matter without further notice or hearing unless a party in interest files a response within <u>twenty-one (21)</u> days from the date set forth on the proof of service attached to this paper plus an additional three days for service. If you object to the relief requested in this paper, you must file your response with the Clerk of the Court at <u>George C Young Courthouse, 400 West Washington Street, Suite 5100, Orlando, Florida 32801</u>

If you file and serve a response within the time permitted, the Court may schedule and notify you of a hearing, or the Court may consider the response and may grant or deny the relief requested without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

---

Comes now the Debtor(s) by and through the undersigned Counsel and files this Motion to Approve Caliber Home Loans Loan Modification Agreement and in support thereof would state as follows:

1. The Debtor(s) has sought a mortgage modification for loan number ending in (last 4 of loan number) 5580, through Caliber Home Loans.

2. The Debtor(s) has been approved for a Loan Modification Agreement through CALIBER HOME LOANS and the payments are $1,968.45 beginning on June 1, 2018.

3. A copy of this Loan Modification Agreement is attached as Exhibit "A".

4. The Debtor(s) has completed step one of a two-step documentation process.

5. Upon the entry of the Permanent Loan Modification Agreement being entered, CALIBER HOME LOANS should file a copy in the Public Records of Orange County, Florida.

6. The Debtor(s) will pay the modified payments to CALIBER HOME LOANS.

7. The Debtor (s) would like to request approval from the bankruptcy court to make my mortgage payment's directly to Caliber Home Loans and not pay them inside my chapter 13 payment plan.

WHEREFORE, Debtor(s) requests this Honorable Court for its Order Approving the CALIBER HOME LOANS Loan Modification Agreement and such other relief that may be deemed just and proper in the circumstances.

Respectfully submitted,    6/7/18

x _____
Al-Karim Jivraj
17700 Deer Isle Circle
Winter Garden, FL 34787

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument has been provided by United States mail on this 7th day of June, 2018 to Robertson, Anschutz & Schneid, P.L. Authorized Agent for Secured Creditor 6409 Congress Ave., Suite 100 Boca Raton, FL 3348, Caliber Home Loans P.O. Box 24610 Oklahoma City, OK 73124-0610

x _____ 6/7/18
Al-Karim Jivraj
17700 Deer Isle Circle
Winter Garden, FL 34787


**CALIBER HOME LOANS**

PO Box 24610
Oklahoma City, OK 73124-0610

5/15/2018

AL-KARIM JIVRAJ
17700 DEER ISLE CIR
WINTER GARDEN, FL 34787-0000

                                              9804225580
                                              17700 DEER ISLE CIR
                                              WINTER GARDEN, FL 34787

Dear AL-KARIM JIVRAJ :

**GREAT NEWS** from Caliber Home Loans! Caliber has reviewed your account and determined that you qualify for a loan modification. If you decide to accept the enclosed loan modification offer, you can expect the following exciting changes to your loan:*

                             Current Monthly Mortgage Payment: $1,743.35
                              Proposed Monthly Payment: $1,968.45*

**You already qualify for this offer, so accepting is easy!** Carefully read and follow these two simple steps:
1. Review the enclosed Loan Modification Agreement and if you agree to the terms and conditions, then:
   a. Have all original borrowers sign and date the agreement in front of a witness.
   b. Have the witness also sign where noted (this is very important; we may delay the final processing of the modification if this is missing).
   c. Borrower(s) must be in the presence of a notary the same day the documents are signed and dated (if required).
2. Using the enclosed prepaid envelope, return to us:
   a. **A good faith payment in the amount of $1,968.45 in the form of certified funds or money order which will be applied towards the total amount due on your loan once the modification is processed.**
   b. Original signed Loan Modification Agreement (make a copy for your records).

Note that all proposed payments include taxes and insurance, regardless of your prior payment arrangement. In addition, **we will defer delinquent escrow balances due in the amount of $48,380.04 if you accept this offer.** This is a limited time offer, so you must return the signed Loan Modification Agreement to Caliber at: **Caliber Home Loans, Inc. Attn: Loss Mitigation Modification, 13801 Wireless Way, Oklahoma City, OK 73134** by no later than 6/30/2018.

Caliber remains committed to working with our borrowers, so please contact us with any questions or to discuss other potential alternatives. Our modification specialists are available to help you with any questions, Monday through Friday, 8:00 AM – 7:00 PM Central Time at 1-800-401-6589.

SPOC Department
Caliber Home Loans, Inc.

* New monthly payment amount will be accomplished through a deferral of outstanding balances, forgiveness of outstanding balances, maturity date extension, and/or an interest-only payment. You should refer to your loan modification agreement for details regarding the terms of your payment. Borrower(s) is informed that forgiveness of principal may have adverse credit and legal consequences and may result in taxable income to Borrower(s).

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge:** If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.

This document was prepared by: Caliber Home Loans Inc.

**LOAN MODIFICATION AGREEMENT – 5 YEAR WITH STEP**

**To the Borrower: This Agreement contains changes in terms which affect your Loan secured by the Property identified below. This is a legal obligation and you should read and understand the terms of this Agreement before you sign it.**

**This Agreement (the "Agreement") is dated as of 5/15/2018 but effective as of the Modification Effective Date defined herein, by and between AL-KARIM JIVRAJ   (collectively, the "Borrower" or "you") and Caliber Home Loans, Inc. (the "Servicer"), on behalf of the current owner of your loan (the "Lender").**

**RECITALS:**

    A.    Borrower has a mortgage loan, account number 9804225580 (the "Loan"). This loan is secured by property commonly referred to as 17700 DEER ISLE CIR WINTER GARDEN, FL 34787 (the "Property").

    B.    Borrower signed the following documents in connection with the Loan:

- Note dated 8/17/2007 in the original amount of $438,750.00 (the "Note").

- Mortgage, Security Deed, or Deed of Trust on the Property, recorded in real property records of ORANGE County, FL (the "Security Instrument"), with an original stated maturity date of 9/1/2037.

- The Note and the Security Instrument, together with all documents executed in relation to the Note and the Security Instrument, and in addition to any loan modification previously entered into by Borrower, are called the "Loan Documents".

    C.    Borrower and Servicer want to modify the terms of the Note and Security Instrument.

In consideration of the foregoing Recitals and the terms, conditions, representations and warranties, and mutual covenants and agreements herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Servicer (collectively, the "Parties"), mutually agree as follows:

1. **Conditions to Effectiveness of Agreement.**

    a. This Agreement will only be effective after Borrower signs and returns a signed original of this Agreement to Servicer on or before 6/30/2018.

    b. Lender will not be obligated or bound to make any modification of the Loan Documents if the Borrower fails to meet any one of the requirements under this Agreement.

2. **Modification of the Loan Documents**

    If the conditions of this Agreement are satisfied, then the Loan is modified as follows:

a. Modification Period: The payments on your loan will be modified from the effective date of the modification, which will be 6/1/2018 (the "Modification Effective Date"). You will pay the initial modified amount from the Modification Effective date until 6/1/2023 ("Initial Modification Period"). At the end of the Initial Modification Period, and beginning at Year 6, your interest rate and corresponding monthly principal and interest payment will increase in accordance with the table below until 6/1/2026, when your interest rate will remain fixed for the balance of the term of your Loan.

b. Term Extension: The term of the Note has been extended and the new maturity date of the Loan will be 6/1/2058.

c. Modified Principal Balance: On the Modification Effective Date, the unpaid principal balance payable under the Note is $454,477.21 (the "Unpaid Principal Balance").

d. Modified Monthly Payment Amount: You promise to make modified monthly payments in an amount set forth in the table below beginning on the First Modification Payment Date and ending on the Maturity Date. The total modified monthly payment amount may include modified monthly principal and interest payments, and any monthly escrow payments (to the extent Servicer will pay escrowed amounts), as identified below.

e. Interest Rate: Interest will be charged on the Unpaid Principal Balance at a rate of 2.50% (the "Modified Interest Rate") beginning on the Modification Effective Date. You will make modified monthly principal and interest payments based on this Modified Interest Rate as applied to the Unpaid Principal Balance beginning on the First Modification Payment Date and ending at the end of the Initial Modification Period.

f. Interest Calculation: If your loan documents call for interest to be calculated using daily simple interest, or DSI, this Agreement permanently modifies your Loan so that interest is calculated on a monthly basis, also known as interest in arrears.

g. Deferred Amounts: We have agreed to defer your obligation to pay the following amounts (the "Deferred Amounts"):

Deferred Principal: $0.00
Deferred Amounts Other Than Principal: $236,759.14

Deferred Amounts do not accrue interest. The Deferred Amounts will be due at the earlier of payment in full of the Note or the Maturity Date. If you sell the Property or refinance the Loan, you will be required to pay this Deferred Amount in addition to any other amounts due at that time. Otherwise, these amounts are due on the Maturity Date and are required to be paid at or before that time. This means that if you make all the payments required by this Agreement, you will still owe the Deferred Amount to Servicer. The Deferred Amount may result in a significantly higher monthly payment on the Maturity Date.

| Summary of the Initial Modification Period Payments: | |
|---|---|
| Unpaid Principal Balance: | $454,477.21 |
| Modified Interest Rate: | 2.50% |
| Modified Monthly Principal and Interest Payment: | $1,498.77 |
| Monthly Escrow Payment (Taxes and Insurance)*: | $469.68 |

| Total Modified Monthly Payment: | $1,968.45 |
|---|---|
| First Modification Payment Date: | 7/1/2018 |
| Maturity Date: | 6/1/2058 |

| Years | Interest Rate | Interest Rate Change Date | Monthly P+I Payment | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Start Date | Number of Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.50% | 6/1/2018 | $1,498.77 | $469.68<br><br>May adjust periodically | **$1,968.45**<br><br>May adjust periodically | **7/1/2018** | 60 |
| 6 | 3.50% | 6/1/2023 | $1,732.68 | May adjust periodically | May adjust periodically | 7/1/2023 | 12 |
| 7 | 4.50% | 6/1/2024 | $1,978.48 | May adjust periodically | May adjust periodically | 7/1/2024 | 12 |
| 8 | 5.50% | 6/1/2025 | $2,234.23 | May adjust periodically | May adjust periodically | 7/1/2025 | 12 |
| 9-Maturity | 6.250% | 6/1/2026 | $2,431.05 | May adjust periodically | May adjust periodically | 7/1/2026 | 384 |

\* Your Monthly Escrow Payment is an amount calculated in accordance with the Loan Documents, and Federal and State law. This amount may change from time to time if escrow items (taxes and insurance) increase or decrease.

3. **Events of Default.** A default under the terms of this Agreement constitutes a default under the terms of the Loan Documents. All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

4. **Additional Covenants and Agreements.**

   The Parties further agree to and acknowledge each of the following:

   A. All persons who signed the Loan Documents must sign this Agreement in person or by an authorized representative, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) Servicer has waived this requirement in writing. Borrower, by signing this Agreement, will be presumed to have read this Agreement and understand the terms of this Agreement.

   B. This Agreement supersedes the terms of any modification, forbearance, trial period plan or

other workout plan that Borrower may have or have had in the past with Servicer or any prior servicer.

C. Except as specifically modified by this Agreement, the terms of the Loan Documents remain in full force and effect, and are duly valid, binding agreements, enforceable in accordance with their terms. This Agreement does not replace or release any terms in the Loan Documents, except as specifically modified by this Agreement. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.

D. Borrower may not assign, and no person may assume, Borrower's rights under this Agreement or the Loan Documents without the prior written consent of the Servicer.

E. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

F. If Servicer makes advances for payment of taxes or insurance, accrues interest, or posts late or other fees or expenses to the Loan, each of which is permissible under the Loan Documents to add to amounts outstanding under the Note, between the date Servicer generates this Agreement and the date this Agreement is processed, then these amounts will either become Deferred Amounts under the Loan Documents, or will be offset with a portion of Good Faith funds, if applicable. Any addition of Deferred Amounts or offset of advances pursuant to this section will be reflected on Borrower's periodic statement.

Deferred amounts do not accrue interest. The Deferred Amounts will be due at the earlier of payment in full of the Note, or the Maturity Date. If you sell the Property or refinance the Loan, you will be required to pay this Deferred Amount in addition to any other amounts due at that time. Otherwise, these amounts are due on the Maturity Date and are required to be paid at or before that time. This means that if you make all the payments required by this Agreement, you will still owe the Deferred Amount to the Servicer. The Deferred Amount may result in a significantly higher monthly payment on the Maturity Date.

G. Borrower will execute such other documents or papers as may be reasonably necessary or required to either (i) consummate the terms and conditions of this Agreement, or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided to Borrower for Borrower's signature. At the option of the Lender, if Borrower elects not to sign any such corrective documentation, the terms of the operative Loan Documents will continue in full force and effect, and such terms will not be modified by this Agreement.

H. This Agreement constitutes notice that any waiver by Servicer as to payment of taxes, insurance and other escrow items has been revoked. Borrower agrees and understands that Borrower will be required to pay certain escrow amounts as required by Servicer in accordance with applicable Federal and state law.

5. **No Waiver.**

Except as specifically provided herein, the Security Instrument shall remain unaltered and in full force and effect and is hereby ratified and confirmed by the Parties hereto. This Agreement shall not constitute a novation of the Security Instrument. The execution, delivery and effectiveness of this Agreement shall not, except as expressly provided herein, operate as a waiver of any right, power or remedy of any party under the Security Instrument.

**THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge: If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.**

| **BALLOON PAYMENT DISCLOSURE** |
|---|
| **This Modification Agreement defers certain amounts, which creates a balloon that will be collected by the Servicer at the earlier of payment in full of the Note or the maturity date. Because these amounts are not included in your regular scheduled payments, even if you make all payments required by this agreement, the loan will not be paid in full at maturity. You therefore may be required to pay the entire outstanding balance in a single payment at the loan maturity date. Neither the Servicer nor Lender has any obligation to refinance or to offer you a new loan at maturity. You may have to seek new third-party financing and incur other additional financing costs at the time the balloon becomes due.** |

In Witness Whereof, Servicer and Borrower have executed this Modification Agreement as of the dates indicated below.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement: